IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA
PITTSBURGH

| | | |
|---|---|---|
| ROBERT BOGLE, | ) | |
| | ) | |
| | ) | 2:21-CV-00319-MJH |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| JD TECHNOLOGIES, INC.[1], RADIATOR | ) | |
| SPECIALTY COMPANY, INC., | ) | |
| | | |
| Defendants, | | |

OPINION

Presently before the Court is Defendant, JDS Technologies, Inc.'s, Motion for Reconsideration (ECF No. 34) of this Court's July 16, 2021 Opinion and Order (ECF Nos. 32 and 33) with regard to the denial of Defendants' Motions to Dismiss (ECF Nos. 8 and 11) pursuant to Fed. R. Civ. P. 12(b)(2). The matter is now ripe for consideration.

After consideration of JDS's Motion for Reconsideration (ECF No. 34), Supplemental Declaration (ECF No. 34-1), Plaintiff's Response (ECF No. 36), and for the following reasons, the Motion for Reconsideration will be granted. This Court's July 16, 2021 Opinion and Order, relative only to JDS's Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(2), will be vacated for reconsideration.

Upon reconsideration of JDS's Motion to Dismiss pursuant of Fed. R. Civ. P. 12(b)(2) (ECF No. 11) and the respective briefs and responses of the parties (ECF Nos. 12, 24, 26 and 29-30), and for the following reasons, JDS's Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(2)

---

[1] The case caption in the Complaint (ECF No. 1) references "JD Technologies, Inc." However, as the name "JDS Technologies, Inc." appears in the Complaint's averments (ECF No. 1 at ¶ 3) and the parties' filings, this appears to be no more than a scrivener's error.

will be granted.  Therefore, Plaintiff's claims against JDS will be subject to dismissal both on personal jurisdiction grounds as well as under the Fed. R. Civ. P. 12(b)(6) grounds as stated in this Court's July 16, 2021 Opinion and Order (ECF Nos. 32 and 33).   In addition to the leave to amend granted to Plaintiff by this Court's July 16, 2021 Order with regard to the claims dismissed pursuant to Fed. R. Civ. P. 12(b)(6),  Plaintiff will be granted  leave to file an amended complaint to address the present jurisdictional defects against JDS. Alternatively, Plaintiff will be granted leave to move to transfer to another jurisdiction.

I. **Motion for Reconsideration**

On July 16, 2021, this Court entered an Opinion and Order which, inter alia, denied JDS's Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(2) on the basis that this Court could maintain general jurisdiction over both Defendants.  (ECF Nos. 32 and 33).  The Court based its decision on the submissions by Plaintiff that JDS had consented to jurisdiction by virtue of its registration under Pennsylvania's foreign business registration statute (42 Pa.C.S. § 5301(a)(2)). (ECF No. 32 at pp.  3-6).

In its Motion to Dismiss, JDS submitted a declaration, wherein it asserted that JDS is a company organized and existing under the laws of Tennessee with its principal place of business located in Tennessee. (ECF No. 12 at p. 21, ¶¶ 4-5). In their respective declaration, RSC and JDS each denied that it was registered to do business in Pennsylvania or that it maintained a registered office in Pennsylvania. (ECF Nos. 9-1 and 12 at p. 22, ¶¶ 8-9 (misnumbered)). JDS also asserted that it does not own, lease, rent, possess, operate, or otherwise have an interest in any real property within Pennsylvania, nor does it maintain any inventory or equipment in Pennsylvania. (ECF No. 12 at p. 22, ¶10 (misnumbered)). JDS maintained it does not have any

employees, does not maintain any corporate records, and does not have any offices, warehouses, or plants located in Pennsylvania. (ECF No. 12 at p. 22, ¶¶ 11-13 (misnumbered)).

Mr. Bogle submitted documents that, contrary to RSC's and JDS's declarations, both were registered as foreign businesses in Pennsylvania. (ECF Nos. 24-6 and 24-7). In particular, Mr. Bogle submitted a registration page from the Pennsylvania Department of State indicating that JDS was registered in Pennsylvania and that it had an address in Newtown, Pennsylvania. (ECF No. 24-7). In RSC's response, RSC conceded that its prior representation regarding registration in Pennsylvania was in error. (ECF No. 25 at p. 2). In JDS's response, JDS did not dispute or refute Mr. Bogle's submissions that it was also registered to do business in Pennsylvania. (ECF No. 26). JDS's reply brief also joined RSC's reply brief, wherein RSC conceded the business registration issue. *Id*.

On reconsideration, JDS contends that it did not reply to Plaintiff's assertions, regarding business registration, because it did not believe it needed to do so. (ECF No. 34 at ¶ 5). JDS now asserts that the company cited by Plaintiff, while bearing the same name, has no relationship to the Tennessee company. (ECF No. 34-1 at ¶¶ 5). In response to the motion for reconsideration, Plaintiff does not address JDS's factual assertions denying any relationship to the JDS entity that was presented in Plaintiff's briefing. Plaintiff's opposition to reconsideration appears based only upon the late timing of the corrected information. (ECF No. 36 at p. 10).

On a motion for reconsideration, the party seeking to have a judgment altered or amended must demonstrate either: (1) a change in controlling law; (2) the availability of new evidence not previously before the court; or (3) "the need to correct a clear error of law or fact or to prevent manifest injustice." *Allaham v. Naddaf*, 635 Fed. Appx. 32, 35–36 (3d Cir. 2015) (quoting *U.S.*

*ex rel. Schumann v. Astrazeneca Pharm. L.P.*, 769 F.3d 837, 848-49 (3d Cir. 2014)); see also *Max's Seafood Café by Lou-Ann, Inc. v. Quinteros*, 176 F.3d 669, 677 (3d Cir. 1999).

Here, JDS implicates the third basis for an appropriate motion to reconsider—i.e. the asserted need to correct clear error. Upon this Court's review of the parties' declarations and submissions, this Court applied incorrect facts when it analyzed JDS's personal jurisdiction arguments. While JDS could have remedied this error in its Reply Brief (ECF No. 26), the interests of justice demand that this Court properly analyze an objection to personal jurisdiction with the correct facts and information. Therefore, the Court will grant JDS's Motion for Reconsideration and proceed to reconsider JDS's Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(2).

## II.    Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(2)

### A. Relevant Background

Mr. Bogle filed the instant action arising from injuries he allegedly sustained from a rubber strap designed, manufactured, assembled, sold, and distributed by Defendants, JDS Technologies Inc. (JDS) and Radiator Specialty Company, Inc (RSC). (ECF No. 1 at ¶¶ 4,9). JDS is a corporation with a principal place of business in Oneida, Tennessee. *Id*. at ¶ 3. Mr. Bogle avers that JDS has engaged in continuous and systematic business within Pennsylvania and with sufficient "contacts" within Pennsylvania to confer jurisdiction. *Id*. at ¶¶ 5, 10. He also alleges that Pennsylvania has jurisdiction over JDS because it has sold and distributed and/or placed its product, the "Hold-Zit" strap, to the general public and into the chain of commerce in Pennsylvania. *Id*. at ¶¶ 6, 11.

JDS submitted a declaration where it asserts that it is a company organized and existing under the laws of the State of Tennessee with its principal place of business located in

Tennessee. (ECF No. 12 at p. 21, ¶¶ 4-5).  From JDS's inspection of provided photographs, it asserts that it manufactured the subject strap in the State of Tennessee and shipped it to RSC in North Carolina.  (ECF No. 12 at p. 21, ¶6).   RSC and JDS also maintain that the Complaint does not include information on how the subject strap reached Pennsylvania or how, where, or when Mr. Bogle came to possess the strap. (ECF Nos. 9-1 at *Id*. at ¶ 7 and 12 at p. 22, ¶9).  In its declaration, JDS denied that it is registered to do business in Pennsylvania or that it maintains a registered office in Pennsylvania. (ECF No. 12 at p. 22, ¶¶ 8-9 (misnumbered)).   JDS asserts that it does not own, lease, rent, possess, operate, or otherwise have an interest in any real property within Pennsylvania, nor does it maintain any inventory or equipment in Pennsylvania. (ECF No. 12 at p. 22, ¶10 (misnumbered)). JDS maintains it does not have any employees, does not maintain any corporate records, and does not have any offices, warehouses, or plants located in Pennsylvania.  (ECF Nos. 9-1 at *Id*. at ¶¶ 11-13 and 12 at p. 22, ¶¶ 11-13 (misnumbered)).

      B.  Standard of Review

Federal Rule of Civil Procedure 12(b)(2) permits a party to move for dismissal of a pleading for lack of personal jurisdiction. Fed. R. Civ. P. 12(b)(2). Whether personal jurisdiction may be exercised over an out-of-state defendant is a question of law for the court. *Vetrotex Certainteed Corp. v. Consolidated Fiber Glass Products Co.*, 75 F.3d 147, 150 (3d Cir. 1996). The plaintiff bears the burden of establishing personal jurisdiction. *O'Connor v. Sandy Lane Hotel Co., Ltd.*, 496 F.3d 312, 316 (3d Cir. 2007). A federal court may exercise personal jurisdiction over a non-resident defendant to the extent permissible under the law of the forum state. Fed. R. Civ. P. 4(k)(1)(A). Personal jurisdiction may be either general or specific, and both the quality and quantity of the necessary contacts differs according to which sort of jurisdiction

applies. *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 412, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984).

Under Federal Rule of Civil Procedure 12(b)(2), a party may move to dismiss an action for lack of personal jurisdiction. Once a challenge to personal jurisdiction has been raised, the plaintiff bears the burden of establishing "jurisdictional facts through sworn affidavits or other competent evidence." *Patterson v. F.B.I.*, 893 F.2d 595, 604 (3d Cir. 1990). The plaintiff must show "either that the cause of action arose from the defendant's forum-related activities (specific jurisdiction) or that the defendant has 'continuous and systematic' contacts with the forum state (general jurisdiction)." *Mellon Bank (East) PSFS, N.A. v. DiVeronica Bros., Inc.*, 983 F.2d 551, 554 (3d Cir. 1993) (citations omitted). When the district court does not hold an evidentiary hearing as to personal jurisdiction, the plaintiff must "establish a prima facie case of personal jurisdiction," and the Court must accept as true all allegations in the complaint. *See Miller Yacht Sales, Inc. v. Smith*, 384 F.3d 93, 97 (3d Cir. 2007); *Carteret Sav. Bank, F.A. v. Shushan*, 954 F.2d 141, 142 n.1 (3d Cir. 1992) ("[C]ourts reviewing a motion to dismiss a case for lack of in personam jurisdiction must accept all of the plaintiff's allegations as true and construe disputed facts in favor of the plaintiff.").

    C. Discussion

        1. General Jurisdiction

JDS contends that this Court cannot exercise general jurisdiction because it is not headquartered or incorporated in Pennsylvania; it is not registered to do business in Pennsylvania; it has no property in Pennsylvania; and it does not test, design, or manufacture products in Pennsylvania. Therefore, JDS maintains that it is not "at home" in Pennsylvania and, therefore, cannot be subjected to general jurisdiction by this Court. In his Complaint, Mr.

Bogle avers that general jurisdiction is proper because JDS "engaged in continuous and systematic business within the Commonwealth and with sufficient 'contacts' within the Commonwealth of Pennsylvania to confer jurisdiction upon JDS." (ECF No.1 at ¶ 5).

General jurisdiction may be asserted over a defendant even when the cause of action has no relation to the defendant's contacts with the forum if the defendant's " 'affiliations with the [s]tate are so 'continuous and systematic' as to render them essentially at home in the forum [s]tate.' " *Daimler AG v. Bauman*, 571 U.S. 117, 128 (2014) (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 920 (2011)).

Here, Mr. Bogle bears the burden to establish facts that would support that JDS is "at home" in Pennsylvania. However, Mr. Bogle has not offered any competent evidence to refute JDS's assertion that it is a company organized and existing under the laws of the State of Tennessee and with its principal place of business in Tennessee. As noted in the reconsideration discussion above, Mr. Bogle had offered exhibits indicating that JDS had an office in Pennsylvania and had registered to do business in Pennsylvania. On reconsideration, JDS submitted a supplemental declaration that the exhibits offered by Mr. Bogle reflected a different company that happened to be also known as JDS. Mr. Bogle has not offered any evidence to contradict JDS's supplemental declaration. Instead, Mr. Bogle's allegations regarding general jurisdiction are conclusory and unsupported by any competent evidence. Therefore, Mr. Bogle has not met his burden that JDS has continuous and/or systematic contacts that would render it "at home" in Pennsylvania. Thus, this Court does not have general jurisdiction over JDS.

    2. Specific Jurisdiction

JDS also argues that this Court cannot exercise specific jurisdiction because Mr. Bogle has not come forward with record evidence that : (i) JDS purposefully directed its activities

toward Pennsylvania; (ii) his product-liability claims arise out of JDS's activities in Pennsylvania; and (iii) the exercise of specific jurisdiction would be reasonable under the circumstances.  In response, Mr. Bogle contends that JDS and RSC placed the subject strap in the "stream of commerce" and that the same is evidenced by the strap's availability through nationwide internet sales.[2] Mr. Bogle further contends that discovery could reveal that JDS and RSC engaged in a joint enterprise regarding the manufacture, marketing, and national sale of the subject strap.   JDS argues, via its incorporation of RSC's reply brief, that the Third Circuit has rejected the "stream of commerce" theory and that the use of internet sales websites does not demonstrate that JDS made purposeful contact with the Western District of Pennsylvania.  JDS further maintains that Mr. Bogle fails to produce any evidence that JDS had any of the requisite contacts with Pennsylvania to confer specific jurisdiction.

In analyzing whether specific personal jurisdiction exists, this Court must determine "whether, under the Due Process Clause, the defendant has 'certain minimum contacts with ... [Pennsylvania] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.' " *O'Connor v. Sandy Lane Hotel Co.*, 496 F.3d 312, 317 (3d Cir. 2007) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945)).

The specific jurisdiction analysis "focuses on the relationship among the defendant, the forum, and the litigation." *Walden v. Fiore*, 571 U.S. 277, 284, 134 S.Ct. 1115, 188 L.Ed.2d 12 (2014). The Third Circuit has elaborated a three-part test to determine whether specific jurisdiction exists. First, "the defendant must have 'purposefully directed [its] activities' at the

---

[2] Notably, in his affidavit, Mr. Bogle asserts that he did not purchase the subject strap on the internet, but rather through a "brick and mortar" store in Pennsylvania. (ECF No. 24-5 at ¶ 4).

8

forum." *O'Connor*, 496 F.3d at 317 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985)). Second, "the litigation must 'arise out of or relate to' at least one of those activities." *Id*. (quoting *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984)). Third, and finally, "if the prior two requirements are met, a court may consider whether the exercise of jurisdiction otherwise 'comport[s] with "fair play and substantial justice." ' " *Id*. (quoting *Burger King*, 471 U.S. at 476, 105 S.Ct. 2174 (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945))). Thus, the Court will begin its inquiry into whether JDS "purposely directed [its] activities" in Pennsylvania and how those align with Mr. Bogle's specific jurisdiction arguments.

First, Mr. Bogle contends that JDS directed its activities through a stream of commerce argument, namely that JDS manufactured the subject strap in Tennessee and that RSC allegedly distributed the product from North Carolina to a consumer in Pennsylvania. The Third Circuit has rejected said rationale to confer specific jurisdiction. *See Shuker v. Smith & Nephew, PLC*, 885 F.3d 760, 780 (3d Cir. 2018) ("We perceive no merit in the Shukers' stream-of-commerce theory of personal jurisdiction."). Therefore, a stream of commerce theory alone would not support this Court conferring specific jurisdiction.

Next, Mr. Bogle proffers the subject strap's availability, to consumers in Pennsylvania through nationwide internet sales through third party websites like Amazon, demonstrates that Defendants directed activities to this forum. Third Circuit precedent requires "some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Id*. (quoting *Asahi Metal Indus. Co. v. Superior Court*, 480 U.S. 102, 108, 109, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1987)). And " 'what is necessary is a deliberate targeting of the forum,' ... so efforts 'to exploit a national

9

market' that 'necessarily included Pennsylvania' are insufficient." *Id*. (quoting *O'Connor*, 496 F.3d at 317 and *D'Jamoos*, 566 F.3d at 104).

" '[T]he mere operation of a commercially interactive website' does not confer jurisdiction wherever that website may be accessed." *Kim v. Korean Air Lines Co.*, – F. Supp. 3d –, 2021 WL 129083, at *4 (D.N.J. Jan. 14, 2021) (quoting *Toys "R" Us, Inc. v. Step Two, S.A.*, 318 F. 3d 446, 454 (3d Cir. 2003)). "Rather, there must be evidence that the defendant 'purposefully availed' itself of conducting activity in the forum state, by directly targeting its web site to the state, knowingly interacting with residents of the forum state via his web site, or through sufficient other related contacts." *Toys "R" Us, Inc. v. Step Two, S.A.*, 318 F. 3d 446, 454 (3d Cir. 2003). In other words, "the likelihood that personal jurisdiction can be constitutionally exercised is directly proportionate to the nature and quality of commercial activity that an entity conducts over the Internet." *Zippo Mfg. Co. v. Zippo Dot Com, Inc.*, 952 F. Supp. 1119, 1124 (W.D. Pa. 1997). Under this sliding scale, the Court must "examine 'the level of interactivity and commercial nature of the exchange of information that occurs on the website' " and determine whether such activity established sufficient minimum contacts to confer jurisdiction. *Ackourey v. Sonellas Custom Tailors*, 573 F. App'x 208, 211-12 (3d Cir. 2014) (quoting *Zippo*, 952 F. Supp. at 1124).

With reference specifically to third party websites like Amazon, this Court has stated that "[w]hile the commercially interactive nature of Defendants' website and its use of the Amazon site place Defendants' actions towards the more interactive end of the *Zippo* spectrum, Plaintiff has not met its burden of showing that Defendants made purposeful contact with the Western District of Pennsylvania." *Guidecraft, Inc. v. OJCommerce, LLC*, No. 2:18-cv-01247, 2019 WL 2373440 (W.D. Pa. May 20, 2019), report and recommendation adopted, No. 2:18-cv1247, 2019

WL 2371645, at (W.D. Pa. June 5, 2019 2019 WL 2373440, at *5. The Court explained that businesses using Amazon "glean customers thousands of miles away" but that "such reach does not meet the definition of purposeful availment[.]'" *Id*. Thus, the Court rejected the plaintiff's argument on personal jurisdiction that "boil[ed] down to the expectation that Defendants should be subject to jurisdiction anywhere in the United States where customers can access and purchase from[…] Amazon." *Id*.  Likewise, in *Flipside Wallets LLC v. Brafman Grp. Inc.*, No. 19-cv5356, 2020 WL 1330742 (E.D. Pa. Mar. 19, 2020), the court noted that Amazon completed, filled, and shipped all orders, and that even if the defendant "knew or should have known that its [products] would end up in Pennsylvania through Amazon sales, that expectation is insufficient to establish specific jurisdiction." *Id*. (internal quotations omitted; citation omitted). Here, Mr. Bogle avers nothing beyond conclusory statements and speculation that JDS purposely directed any commercial activity to Pennsylvania through internet sales.  Accordingly, internet sales by third party websites, such as Amazon, is insufficient for the conferral of specific jurisdiction against JDS.

In addition to internet sales, Mr. Bogle argues that this Court has specific jurisdiction by virtue of JDS's alleged use of "multiple intermediaries to sell [its] products to consumers throughout the United States, including, of course, throughout Pennsylvania." (ECF No. 24) However, unilateral acts of third-party intermediaries are insufficient to confer jurisdiction. *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 417 (1984); see also *Johnson Controls, Inc. v. Irving Rubber & Metal Co.*, 920 F. Supp. 612, 617 (M.D. Pa. 1996) ("Unilateral acts of the plaintiff or a third party are not sufficient in and of themselves to establish specific jurisdiction because they do not satisfy the purposeful availment requirement"). Here, an inquiry into how the product reached Pennsylvania through the acts of a third party has no bearing on

whether JDS had sufficient minimum contacts for this Court to confer specific jurisdiction. Mr. Bogle has produced no competent evidence which connects JDS's activities with those of the internet sales companies or the store in which he purchased the subject strap. Likewise, whether RSC directly distributed the subject strap to Pennsylvania does not sufficiently establish minimum contacts relative to JDS. Further, Mr. Bogle presents no prima facie basis indicating that JDS coordinated with RSC in any way to direct the sales of the subject strap to Pennsylvania.

Finally, Mr. Bogle contends that the United States Supreme Court recent decision in *Ford Motor Co. v. Montana Eighth Judicial District Court*, 141 S. Ct. 1017 (2021) supports his specific jurisdiction argument. In *Ford Motor Co.*, a state court exercised jurisdiction over the car manufacturer in a products-liability suit stemming from a car accident that injured a resident in the state. The manufacturer moved to dismiss for lack of personal jurisdiction, arguing that the state court had jurisdiction only if the company's conduct in the state had given rise to the plaintiff's claims. Ford designed and manufactured the vehicles elsewhere, and originally sold them outside the forum state. Only later resales and relocations by consumers had brought the vehicles into the forum state. The Supreme Court held that the connection between the plaintiffs' claims and the car manufacturer's activities in the forum state was close enough to support specific jurisdiction. In particular, *Ford Motor Co*. involved a global car manufacturer that markets, sells, and services cars across the United States and overseas, as well as encourages a resale market for its vehicles. The Supreme Court found that Ford had a "veritable truck load of contacts" with the forum state. 141 S. Ct. at 1028. Furthermore, Ford conceded that it purposely directed its activities to the forum state. *Id*. at 1026, 1028

Here, Mr. Bogle asks the Court to confer jurisdiction based upon the nationwide sales scheme found in *Ford Motor Co.*  However, *Ford Motor Co.* is distinguishable from the instant action.  Mr. Bogle provides nothing in his pleadings or submissions that JDS engaged in any nationwide sales scheme or that Mr. Bogle saw JDS marketing efforts that induced him into using or purchasing a Hold-Zit strap.  Therefore, *Ford Motor Co.*'s application of specific jurisdiction analysis does not apply here.

Accordingly, Mr. Bogle's pleadings and submissions do not support that JDS purposely directed any activities to Pennsylvania that aid in meeting his specific jurisdiction burden.  Accordingly, JDS's Motions to Dismiss pursuant to Fed. R. Civ. P. 12(b)(2), for lack of personal jurisdiction, will be granted.

### III.   Conclusion

After consideration of JDS's Motion for Reconsideration (ECF No. 34), Supplemental Declaration (ECF No. 34-1), Plaintiff's Response (ECF No. 36), and for the foregoing reasons, the Motion for Reconsideration will be granted.   This Court's July 16, 2021 Opinion and Order relative only to JDS's Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(2) will be vacated for reconsideration.

Accordingly, after reconsideration of JDS's Motion to Dismiss pursuant of Fed. R. Civ. P. 12(b)(2) (ECF No. 11) and the respective briefs and responses of the parties (ECF Nos. 12, 24, 26 and 29-30), JDS's Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(2) will be granted. Therefore, the claims against JDS will be subject to dismissal both on personal jurisdiction grounds as well as under the Fed. R. Civ. P. 12(b)(6) grounds as stated in this Court's July 16, 2021 Opinion and Order (ECF Nos. 32 and 33).   In addition to the leave previously granted to Plaintiff with regard to the claims dismissed pursuant to Fed. R. Civ. P. 12(b)(6), Plaintiff will be

granted leave to file an amended complaint to address the present jurisdictional defects against JDS. Alternatively, Plaintiff will be granted leave to move to transfer to another jurisdiction. A separate order will follow.

    DATED this 6th day of August, 2021.

        BY THE COURT:

        _____
        MARILYN J. HORAN
        United States District Judge